IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TEKSYSTEMS, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB 10-1145 |
| JAMES TRISTEN FLETCHER, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff TEKsystems, Inc. ("TEKsystems") brings the pending action against its former employee, Defendant James Tristen Fletcher ("Fletcher"), who it claims violated eighteen-month non-compete and non-solicitation covenants and a covenant not to divulge confidential information. Plaintiffs bring suit in this Court based on diversity of citizenship. *See* 28 U.S.C. § 1332. Fletcher moves to dismiss the claims for lack of subject matter jurisdiction, contending that the amount in controversy does not exceed the required $75,000 threshold. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendant Fletcher's Motion to Dismiss (ECF No. 4) is GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiff TEKsystems, which has its principal place of business in Maryland, recruits, employs and provides technical service personnel to companies throughout the country on both a

1

temporary and permanent basis. Compl. ¶ 7. On June 12, 2006, TEKsystems hired Defendant Fletcher, a Massachusetts resident, as an Account Manager. *Id.* ¶ 15. At the start of his employment, Fletcher signed an Employment Agreement ("Agreement") containing a non-compete covenant prohibiting him from becoming employed by a company engaged "in any aspect of TEKsystems' Business" for eighteen months following his termination from TEKsystems. *Id.* ¶ 25; Compl. Ex. A. The Agreement also includes an eighteen-month non-solicitation covenant and a covenant not to divulge confidential information. *Id.*

As an Account Manager for TEKsystems, Fletcher searched for and placed qualified information technology professionals in and around Boston, Massachusetts. Fletcher Decl. ¶ 3 (ECF No. 4, Ex. 1). In this role, Fletcher had access to TEKsystems' confidential information, such as its client lists, internal employee contracts, client service agreements and bill rate information. Compl. ¶ 17. Fletcher reported to Christopher Deal, the head of TEKsystems' staffing services office in Framingham, Massachusetts. *Id.* ¶ 5. Fletcher's W-2 shows that his compensation from TEKsystems, including commissions, was $75,439 in 2007 and $81,909 in 2008. *Id.* ¶ 6. Fletcher stopped working for TEKsystems on or around February 16, 2009, and therefore only received a W-2 from TEKsystems for approximately six weeks of work in 2009. *Id.* ¶ 22.

After leaving his job as Account Manager at TEKsystems, Fletcher became a Business Development Manager for one of its subsidiary divisions, TEKsystems Global Services, LLC ("Global Services"). Compl. ¶ 22; Fletcher Decl. ¶ 7. Global Services provides clients with training solutions in conjunction with TEKsystems Account Managers, and works with TEKsystems clients to provide IT training. Compl. ¶ 22. Plaintiff claims that while at Global Services, Fletcher retained access to the same sales tools and confidential information that he

utilized as an Account Manager at TEKsystems. Dana Geisert Aff. ¶¶ 5, 6 (ECF No. 9, Attach. 2). While employed by Global Services, Fletcher reported to Dana Geisert, who led its education and training services business and is based in Minneapolis, Minnesota. Fletcher Decl. ¶ 10. Fletcher stayed at Global Services for fourteen months, from approximately February 16, 2009 through April 24, 2010, when he voluntarily resigned from his position. Fletcher Decl. ¶ 9. During this time, Fletcher worked exclusively for Global Services, and was paid only by Global Services. *Id.*

On April 26, 2009, Fletcher began working at the Eliassen Group ("Eliassen") as an Account Executive. Compl. ¶¶ 29, 32; Fletcher Decl. ¶ 12. Like TEKsystems, Eliassen specializes in placing information technology professionals. Compl. ¶ 34. Fletcher asserts that he has not solicited any TEKsystems client since joining Eliassen, took no documents or information from his former employer, and has not disclosed any of TEKsystems' confidential information. *Id.* ¶¶ 13, 14.

## STANDARD OF REVIEW

The jurisdiction of the federal courts is limited. Federal jurisdiction is available only when a "federal question" is presented or the parties are of diverse citizenship and the amount in controversy exceeds $75,000. *See* U.S. Const. Art. 3 § 2; 28 U.S.C. §§ 1331 & 1332. The burden of establishing diversity jurisdiction rests with the party seeking to litigate in federal court. *See Gwyn v. Wal-Mart Stores, Inc.,* 955 F. Supp. 44, 45 (M.D.N.C. 1996) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also, e.g., Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). It is well settled in the Fourth Circuit that the test for determining the amount in controversy in a diversity proceeding is "the pecuniary result to either

party which [a] judgment would produce." *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (citing *Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964)). This Court has held that "The Fourth Circuit appears to apply the 'either-viewpoint' rule in determining the value of the object of the litigation." *Gonzalez v. Fairgale Props. Co.*, 241 F. Supp. 2d 512, 517 (D. Md. 2002). Under the "either-party" rule, the amount-in-controversy requirement is satisfied if either the gain to the plaintiff or the cost to the defendant is greater than $75,000. *Gonzalez*, 241 F. Sup. 2d at 517.

## ANALYSIS

Defendant Fletcher contends that the claims against him must be dismissed for lack of subject matter jurisdiction because the amount in controversy does not exceed $75,000.

**I.      Timing of the Restrictive Covenants**

The Agreement states that "upon the termination of EMPLOYEE'S employment, whether by TEKsystems or EMPLOYEE" the employee will not compete with "any aspect of TEKsystems' Business" or solicit any client or customer of "any of the TEKsystems Companies" for period of eighteen months. Agreement ¶¶ 3, 4. The Agreement concludes by stating: "The parties hereto understand that this Agreement shall remain in effect notwithstanding any job change or job assignment by EMPLOYEE within TEKsystems or its organization." *Id*. at 8. Notably, the Agreement defines the term "TEKsystems" as "TEKsystems, Inc." and defines the term "TEKsystems Companies" as "TEKsystems and its related companies and subsidiaries and affiliates, Onsite Companies, Inc. and Mentor 4, Inc." *Id*. at 1. The Agreement does not define the term "organization."

Fletcher claims that the plain interpretation of Agreement's language is that the eighteen-month restrictive covenants began to run on February 16, 2009, when he resigned his position at

4

TEKsystems and moved to a position with its subsidiary, Global Services. Thus, Fletcher argues that when he joined Eliassen approximately fourteen months later, on April 26, 2010, only four months remained on the restrictive covenants. Accordingly, Fletcher contends that at most a four month period of time is at stake, and that any alleged violation during this time does not reach the required $75,000 threshold.

Plaintiff TEKsystems emphasizes the language stating that the Agreement would remain in effect in the event that Fletcher changed jobs "within TEKsystems or its organization." Opp'n at 6-8. TEKsystems contends that this phrasing means that the express terms of the Agreement provide that it remained in effect even if Fletcher transferred to a different job with TEKsystems or with an entity within its corporate family, as Fletcher did when he began working for Global Services, a TEKsystems subsidiary. *Id.* at 7. Given this language, Plaintiff contends that Fletcher's eighteen-month restrictive covenants did not begin to run when he left TEKsystems, but instead only began to run when he voluntarily resigned from Global Systems on April 24, 2010. Accordingly, TEKsystems asserts that its potential losses and the costs to Fletcher of complying with an injunction during the following eighteen months exceed the $75,000 jurisdictional threshold.

Fletcher's interpretation of the Agreement is the most logical. Interpreting the statement that the Agreement shall remain in effect regardless of any job change "within TEKsystems or its organization" to mean that it shall remain in effect even where an employee begins working at a subsidiary would require this Court to ignore the Agreement's defined terms. The Agreement expressly distinguishes between the terms "TEKsystems" and "TEKsystems Companies." Agreement at 1. "TEKsystems" refers only to "TEKsystems, Inc.," whereas "TEKsystems Companies" refers to "TEKsystems and its related companies and subsidiaries and affiliates . . ."

*Id*. As this Court has previously explained, "When the parties have defined a term in an agreement between them, and have obviously used that term in accordance with the definition in many portions of the agreement, a strong showing is required to establish that a different meaning of the defined term was intended in another portion of the agreement . . . ." *County Comm'rs v. Panda-Brandywine, L.P.*, 663 F. Supp. 2d 424, 430 (D. Md. 2009) (quoting *United States v. Bethlehem Steel Co.*, 215 F. Supp. 62, 64-65 (D. Md. 1962)). TEKsystems uses the phrase "TEKsystems Companies" in accordance with its definition throughout the Agreement. *See, e.g.*, Agreement at ¶ 6 ("EMPLOYEE shall not use, disclose or divulge any Confidential Information of TEKsystems to any other person, entity or company besides the TEKsystems Companies.").

Though the term "organization" is not defined, "ambiguities in an instrument are resolved against the party who made it or caused it to be made, because that party had the better opportunity to understand and explain his meaning. *King v. Bankerd*, 303 Md. 98, 106 (Md. 1985). Thus, this Court interprets the phrase "within TEKsystems or its organization" to mean that job changes anywhere within TEKsystems, Inc. will not terminate the Agreement. As Fletcher points out, had TEKsystems intended this provision to relate to job changes between related or affiliated companies, it would have used the defined term "TEKsystems Companies" instead. Reply at 5. As a result, the eighteen-month restrictive covenants began to run on February 16, 2009, when Fletcher left TEKsystems, Inc. and joined Global Services. Therefore, even assuming Fletcher's employment with Eliassen violated the restrictive covenants; it did so for only four months. Plaintiff does not allege that the value of an injunction for this four month period meets the $75,000 threshold. Accordingly, Plaintiff has not met the burden of establishing diversity jurisdiction.

**II.      Value of Previous Access to Confidential Information**

TEKsystems additionally argues that absent injunctive relief, Fletcher's possession of its confidential information puts him in a position to cause irreparable harm "to a magnitude greater than $75,000." Opp'n at 9. As mentioned above, however, TEKsystems' Complaint does not specifically allege that Fletcher has breached the confidentiality provision of the Agreement. Fletcher has also maintained his intention not to disclose this information to Eliassen. Fletcher Decl. ¶¶ 5-6. Thus, TEKsystems' claim as to the value of Fletcher's previous access to confidential information is premised only upon the mere possibility that he might disclose information in the future. This abstract claim does not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, this allegation is insufficient to show that the amount-in-controversy requirement has been satisfied.

## CONCLUSION

For the reasons stated above, Defendant Fletcher's Motion to Dismiss (ECF No. 4) is GRANTED.

A separate Order follows.

Dated:       March 2, 2011                                  /s/_____
                                                            Richard D. Bennett
                                                            United States District Judge